UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LESTER FACEY,**<br><br>                    Plaintiff,<br><br>          v.<br><br>**LEE M. ZELDIN**, et al.,<br><br>                    Defendants. | Case No. 1:22-cv-03145 (TNM) |

**MEMORANDUM OPINION**

Lester Facey, Ph.D., a former Environmental Protection Agency employee, sues the EPA and its Administrator, Lee Zeldin (collectively, "the Agency"), under Title VII of the Civil Rights Act.[1] Facey maintains that his supervisors retaliated against him for engaging in protected activity. The Court previously dismissed all Facey's other claims, but it allowed his retaliation claim to proceed so that he could obtain discovery about the Agency's reason for his reassignment in job status. Mem. Order, ECF No. 28. The Agency's renewed motion for summary judgment is now ripe. The Court will grant that motion because the Agency has offered a legitimate, nonretaliatory explanation for Facey's reassignment in job status and Facey has failed to rebut that explanation as pretextual.

I.

Lester Facey worked as a Program Manager Analyst in EPA's Diversity, Recruitment, and Employee Services Division ("the Division"). Pl.'s Resp. Stmt. Material Facts ¶ 1, ECF No. 35-5. Facey's supervisor looked to him when another position within the Division became

---

[1] Facey's Complaint names Michael S. Regan, in his official capacity as EPA Administrator, as Defendant. Second Am. Compl. ¶ 4. Lee M. Zeldin, the current Administrator, has been automatically substituted as Defendant. *See* Fed. R. Civ. P. 25(d).

1

vacant. The previous Veterans Employment Program manager ("VEP manager"), Tania Allen, had been temporarily promoted. Pl.'s Resp. Stmt. Material Facts ¶¶ 2, 3; Def.'s Ex. B ("Cunningham Aff.") ¶ 30, ECF No. 34-3. Division Director Bisa Cunningham assigned Facey to serve as acting VEP manager in February 2017. Pl.'s Resp. Stmt. Material Facts ¶ 4; Cunningham Aff. ¶¶ 1, 17. Cunningham made that decision because the previous VEP manager had been a GS-14 employee and Facey had the lowest workload of the GS-14 staff. Cunningham Aff. ¶ 17; Def.'s Ex. A ("Allen Aff.") ¶ 18, ECF No. 34-3.

Cunningham also thought the position would be good for Facey. She described it as "fresh start" that would give him "the opportunity to demonstrate his capabilities." Cunningham Aff. ¶ 17. She explained that Facey had "demonstrated a lack of aptitude in effectively performing the duties of his existing position" and told Facey that serving as VEP manager would "enable [him] to broaden [his] skills and expertise and provide [him] with access and exposure to multiple layers of leadership and to multiple stakeholders both internal and external to the organization." *Id.* Facey's new position carried with it another important difference. Program manager analysts were part of a bargaining unit, but the VEP manager was not. Pl.'s Resp. Stmt. Material Facts ¶ 28. Facey's change in position, however, did not immediately affect his union membership. Because Cunningham did not formally reassign Facey to the role, he remained classified as a program manager analyst while he served as acting VEP manager. *See id.*; Def.'s Ex. I at 69, ECF No. 34-3.[2]

As a result, Facey received union representation when he filed an Equal Employment Opportunity ("EEO") complaint in September 2017. Second Am. Compl. ¶ 15; Pl.'s Resp. Stmt. Material Facts ¶ 10. That complaint challenged the Agency's denial of his request to apply for a

---

[2] The Court uses the pagination generated by the CM/ECF system.

fellowship. *See* Pl.'s Resp. Stmt. Material Facts ¶¶ 6–8, 10. Facey alleged that Cunningham and another Agency official had discriminated against him because of his race, color, religion, and sex. Def.'s Ex. C at 41, ECF No. 34-3.

Throughout the EEO proceedings, Facey continued to serve as VEP manager. *See* Cunningham Aff. ¶ 34. In August 2017, Tania Allen became his supervisor upon her official promotion to chief of the Diversity & Recruitment Branch. Allen Aff. ¶¶ 1, 3, 4. Allen was not named in the EEO proceeding. Pl.'s Resp. Stmt. Material Facts ¶ 12. By September 2017, Facey was working remotely following his diagnosis with anxiety disorder and depression. Second Am. Compl. ¶ 7. The next month Facey filed a request with EPA's National Reasonable Accommodations Coordinator ("NRAC") to make his medical telework arrangement permanent. *Id.* ¶ 9. In December 2017, after an investigation, the NRAC concluded that Facey had a covered disability and asked Allen, as Facey's supervisor, to determine whether to grant his requested accommodation. *Id.* ¶ 10.

Soon after, Allen evaluated Facey's request and offered him an option to telework twice per week with a private cubicle for in-office days. *Id.* ¶ 12; Pl.'s Ex. C ("Allen Dep.") at 99:4–11, 101:1–3, ECF No. 35-4. She did not accept his request for full-time medical telework. Second Am. Compl. ¶¶ 10, 12. In early January 2018, in response to an email from Allen reminding him about a deadline, Facey expressed frustration with Allen. Pl.'s Ex. A at 1–2, ECF No. 35-2. He reported that her "accusatory emails and tone" caused him to have panic attacks and he felt he was "being discriminated and retaliated against" for submitting his accommodation request. *Id.* at 1.

Over a month later, Allen requested position descriptions for the employees in her unit—including Facey—ahead of a reorganization. Pl.'s Resp. Stmt. Material Facts ¶ 16; Def.'s Ex. E

at 56, ECF No. 34-3.  When Allen received Facey's position description, she saw he was still classified as a bargaining-unit program analyst and asked a Human Resources assistant whether he needed to be classified as a non-bargaining unit employee.  Pl.'s Resp. Stmt. Material Facts ¶ 19.  The HR assistant confirmed that Facey should be so classified, and another assistant subsequently told Allen that they "would need a reassignment action" because Facey had not been officially reassigned as VEP manager.  *Id.* ¶¶ 20, 21.  Allen agreed that Facey needed to be officially reassigned on February 15.  *Id.* ¶¶ 22, 41.  Allen described the reclassification as "an Administrative task," explaining that Facey had served as VEP manager "since January 2017 but Bisa [Cunningham] didn't do the reassignment paperwork at that time."  Def.'s Ex. I at 69; Pl.'s Resp. Stmt. Material Facts ¶ 25.

While HR processed Facey's reassignment, Allen continued to discuss the position descriptions for the rest of her staff with HR.  Def.'s Ex. E at 54.  The division-wide reorganization for which Allen sought those descriptions was ultimately completed in 2019.  Pl.'s Resp. Stmt. Material Facts ¶ 31.  Many employees were reclassified as a result.  Def.'s Ex. M at 88, ECF No. 34-3.  Facey's reassignment was completed months earlier:  His official reassignment to VEP manager became effective on March 4, 2018, at which time he also lost his bargaining unit status.  Pl.'s Resp. Stmt. Material Facts ¶¶ 27, 29.  Facey learned about his change in bargaining status two days after his reassignment became effective.  *Id.* ¶ 30.

Four years later, after initiating another EEO proceeding, Facey filed this lawsuit raising several claims of discrimination and retaliation.  ECF No. 1.  This Court has subject-matter jurisdiction.  *See* 28 U.S.C. § 1331.  In a prior order, the Court dismissed all but one of Facey's claims.  ECF No. 28 at 6–18.  It allowed Facey to proceed to discovery on his sole remaining

claim for retaliation under Title VII of the Civil Rights Act based on his job reassignment. *Id.* at 18–19. The Court now considers the Agency's motion for summary judgment.

## II.

To prevail at summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party seeking summary judgment has the initial burden of identifying those portions of the record that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets that burden, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (cleaned up); *see* Fed. R. Civ. P. 56(c)(1), (e). At summary judgment, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. But the nonmoving party "may not rest upon mere allegation or denials of his pleading." *Id.* at 248.

## III.

Title VII of the Civil Rights Act prohibits the federal government from retaliating against employees who complain of employment discrimination. *See* 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, Facey must show that (1) he engaged in a statutorily protected activity; (2) his employer took a materially adverse personnel action; and (3) a causal connection existed between the two. *Solomon v. Vilsack*, 763 F.3d 1, 14 (D.C. Cir. 2014). If

5

Facey makes that showing, "the burden of production shifts to the employer to produce a legitimate, nondiscriminatory reason for its action." *Id.* (cleaned up).

Because Facey offers only circumstantial evidence of retaliation, his claim is governed by the *McDonnell Douglas* burden-shifting framework. *Id.* at 14; *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, as applied in this circuit, "once the employer asserts a legitimate, non-discriminatory reason, the question whether the employee actually made out a prima facie case is no longer relevant and thus disappears and drops out of the picture." *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008) (cleaned up); *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009) (applying *Brady* to a retaliation claim). At that point, the Court "need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*." *Brady*, 520 F.3d at 494. The Court instead "reviews each of the three relevant categories of evidence—prima facie, pretext, and any other—to determine whether they either separately or in combination provide sufficient evidence for a reasonable jury to infer retaliation." *Jones*, 557 F.3d at 679 (cleaned up).

Facey claims that Allen retaliated against him by reassigning him to a new position, thereby depriving him of the collective bargaining rights he had previously enjoyed. *See, e.g.*, Pl.'s Opp'n to Summ. J. ("Pl.'s Opp'n") at 7, ECF No. 35; Second Am. Compl. ¶ 30. As the Court understands Facey's Complaint, he advances two theories as to why this retaliation occurred. First, he maintains that Allen retaliated against him for his 2017 EEO proceeding. Second Am. Compl. ¶ 17.[3] Second, Facey maintains that Allen retaliated against him for requesting workplace accommodations and speaking out against her treatment of him after he

---

[3] Facey has apparently abandoned this theory by declining to defend it in his brief and pivoting instead to a second theory. *See* Pl.'s Opp'n Mot. at 8–9.

6

made that request.  Pl.'s Opp'n at 8.  The Court takes each theory in turn and ultimately concludes that Facey cannot prevail on either theory.

### A.

Facey first maintains that Allen initiated his reassignment, thereby depriving him of collective bargaining rights, in retaliation for his participation in the 2017 EEO proceeding.  Second Am. Compl. ¶ 30.  The Agency has offered a legitimate, nonretaliatory reason for reassigning Facey—he was reassigned so he could permanently fill the VEP manager position after serving as acting VEP manager for more than a year.  *E.g.*, Def.'s Mem. in Supp. Summ. J. at 12, ECF No. 34-1; Allen Aff. ¶ 21.  Because the Agency has proffered a legitimate, nonretaliatory explanation for Facey's reassignment, the Court skips straight to "the central issue":  Did Facey "produce[] evidence sufficient for a reasonable jury to find that the employer's stated reason was not the actual reason and that the employer intentionally discriminated against [Facey] based on his [protected EEO activity]"?  *Brady*, 520 F.3d at 495.  Facey has not made this showing.

Facey fails to present "sufficient evidence that would discredit" the Agency's legitimate, nonretaliatory reason for his reassignment.  *Baloch v. Kempthorne*, 550 F.3d 1191, 1200 (D.C. Cir. 2008).  In fact, Facey starts from a particularly weak position because he admits that "EPA reassigned Facey to the [VEP manager] position because he had been serving in the position on an acting basis for over a year and EPA needed to fill the position permanently."  Pl.'s Resp. Stmt. Material Facts ¶ 40; *see* Allen Aff. ¶¶ 17, 18, 21; Cunningham Aff. ¶¶ 17, 18, 21.  And there is no genuine dispute that Facey's change in bargaining status resulted from his reassignment to VEP manager.  *See* Pl.'s Resp. Stmt. Material Facts ¶¶ 28–29.  Indeed, Facey's

7

predecessor as VEP manager had the same non-union designation as Facey after his reclassification. Cunningham Aff. ¶¶ 17–18.

Facey meets this undisputed evidence with a seven-page opposition brief that gestures at reasons why the reassignment decision may have been pretextual. Even construing Facey's briefing generously, his arguments come up short.

First, he appears to question the motives behind his initial temporary assignment to VEP manager because he "had never been trained in or performed human resources work." Pl.'s Ex. A ("Facey Decl.") ¶ 2, ECF No. 35-3. Even if Facey had made that argument in his brief, rather than in his declaration alone, it would not be enough to show pretext. Though an employer's "inconsistent or dishonest explanations" can be enough to show pretext, *Walker v. McCarthy*, 170 F. Supp. 3d 94, 104 (D.D.C. 2016), the reasons behind Facey's reassignment appear truthful and coherent. Facey began serving as acting VEP manager after Allen was promoted. Pl.'s Resp. Stmt. Material Facts ¶ 3–4; Allen Dep. 79:12–20. The division "needed someone" to fill the position and Facey was the GS-14 staff member with the greatest availability to take on the role. Allen Dep. 79:13–17; Allen Aff. ¶ 17. Management also thought that the new role would be a good professional opportunity for Facey. Cunningham Aff. ¶ 18. Facey served as acting VEP manager for about a year, during which time Allen thought the temporary reassignment "seem[ed] to be working." Allen Dep. 79:18–19. And so, when Allen received Facey's position description in February 2018, she decided to "go ahead and do an official reassignment" so that he could permanently fill the position. *Id.* at 79:19–20; *see* Pl.'s Resp. Stmt. Material Facts ¶ 40. She made that decision with independent HR assistants who confirmed that Facey needed to be formally reassigned so that his position could be updated. *See, e.g.*, Def.'s Ex. F at 59, 34-3; Cunningham Aff. ¶¶ 17–18. Facey offers no basis to question the veracity of these explanations.

Second, Facey emphasizes that none of his program analyst colleagues were reassigned until nearly a year later, as part of the broader reorganization. Pl.'s Opp'n at 9. That does not undermine the Agency's legitimate reasons for Facey's reassignment. For these colleagues to be comparators, Facey must show that "the relevant aspects of his employment situation were nearly identical to those of [his colleagues]." *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) (cleaned up). This includes the similarity of the putative comparators' "jobs and job duties." *Id*. And, again, by the time of his reassignment, Facey had been acting as VEP manager—a different role with different duties than his program analyst colleagues. *See* Pl.'s Resp. Stmt. Material Facts ¶ 40. Further undermining Facey's argument is undisputed evidence showing that even if Facey "had not been reassigned" in February 2018 and had instead continued in the VEP manager position on an acting basis, "his division would have become one that was [a] non-bargaining unit" by 2019 as part of the broader reorganization. Allen Dep. at 111:1–4; *see* Def.'s Ex. L at 76–83, ECF No. 34-3 (document dated several months after Facey's reassignment summarizing the Agency's reorganization plan).

The record does not give rise to a triable question about whether Facey was reassigned in retaliation for his 2017 EEO activity. Instead, the evidence corroborates the Agency's position that Facey was reassigned for a legitimate, nonretaliatory reason.

## B.

Facey concentrates on a second theory in his brief. He maintains that Allen initiated his reclassification in retaliation for his request for workplace accommodations and subsequent complaint about her discrimination against him. Pl.'s Opp'n at 7–8. Here, he focuses on two specific actions. First, his October 2017 request for workplace accommodations that Allen partially denied in December 2017. Second Am. Compl. ¶¶ 9, 12. Second, his January 4 email

complaining that Allen was discriminating and "retaliating against him for having requested accommodations." Pl.'s Opp'n at 7; *see* Pl.'s Ex. A. Facey presents both incidents of protected activity as the basis for his allegedly retaliatory reassignment and attendant loss in bargaining unit status. Because the Agency has asserted a legitimate nonretaliatory justification for the reassignment, the Court once again proceeds to the question of retaliation *vel non*. And once again, Facey cannot survive summary judgment.

As an initial argument, the Agency's claims that Facey failed to exhaust this theory of his retaliation claim. Def.'s Reply in Supp. of Summ. J. at 11, ECF No. 36. The Agency points out that Facey's EEO intake form and initial interview for this case premised his retaliation claim on his 2017 EEO proceeding. ECF No. 25-3 at 2; ECF No. 23-3. But Facey's EEO materials repeatedly referenced his request for accommodations and Allen's response alongside general allegations that he had been discriminated and retaliated against. ECF No. 25-6 at 1; *see* ECF No. 25-7 at 12 (noting Facey's allegation that he had "opposed . . . Allen's conduct as discriminatory" and that he "at numerous times told [her] to stop discriminating against him"). True, Facey's materials are not a model of clarity. He seemed to maintain that Allen denied his accommodations request in "retaliation for his participation in EEO activities." Discrimination Compl. Form at 2, ECF No. 25-5.[4] Facey's argument has shifted. He now points to his request for accommodations and subsequent complaint about Allen's denial of that request as protected activity that he believes led to his reassignment. *See* Pl.'s Opp'n at 8. The Court acknowledges Facey's changing theories but stops short of finding this claim unexhausted. Facey's claim that

---

[4] Facey's attempt to rely on Allen's denial of his accommodations request as an adverse personnel action proved unsuccessful because Facey did not consult an EEO counselor within 45-days of learning about the denial of his request for full-time telework. ECF No. 25-7 at 16 (final EEO decision denying the claim on this basis); *see* 29 C.F.R. § 1614.105(a)(1).

10

he was retaliated against for requesting accommodations is at least "reasonably related to" the retaliation and discrimination claims pressed in his EEO complaint. *Webster v. Del Toro*, 49 F.4th 562, 568 (D.C. Cir. 2022) (citation omitted).

That does not, however, mean that Facey's theory is properly presented. Facey's claim that he was retaliated against for the January 2018 email he sent to Allen complaining about her behavior towards him fails because no allegations support it in his Complaint. "Plaintiffs cannot use summary judgment briefing to press claims not raised in their complaints." *Weatherspoon v. Azar*, 380 F. Supp. 3d 65, 75 (D.D.C. 2019); *see id.* (concluding that a plaintiff's "theory of retaliation fails because it is not in her Complaint").[5]

Turning to the merits of Facey's claim that Allen retaliated against him for requesting workplace accommodations, this second theory starts out on surer footing because the record at least contains some evidence of causation. *See Jones*, 557 F.3d at 679 (evidence of prima facie elements of a retaliation claim is relevant at the retaliation *vel non* stage). Allen knew about Facey's request for accommodations because she was the one who evaluated his request and countered with alternative accommodations. *See* Allen Dep. 99:4–101:3. And Allen addressed Facey's request for accommodations in December 2017, about two months before she initiated his reassignment. *See id.*; Pl.'s Resp. Stmt. Material Facts ¶ 42. That evidence may suffice to establish causation as part of a prima facie inquiry. *See, e.g.*, *Allen v. Johnson*, 795 F.3d 34, 40 (D.C. Cir. 2015) ("The temporal proximity of an adverse action close on the heels of protected activity is a common and highly probative type of circumstantial evidence of retaliation.").

---

[5] Even if Facey had properly alleged a retaliation claim based on his January 8 email, the Agency would still get summary judgment because the evidence does not give rise to a triable question of pretext, as the Court explains above.

11

But where the "employer has provided a legitimate, nonretaliatory reason for its employment action, positive evidence beyond mere proximity is required to defeat the presumption that the proffered explanation is genuine." *Durant v. District of Columbia*, 875 F.3d 685, 700 (D.C. Cir. 2017) (cleaned up). After all, "if temporal proximity sufficed to rebut a legitimate proffer, then protected activities would effectively grant employees a period of immunity, during which no act, however egregious, would support summary judgment for the employer in a subsequent retaliation claim." *Allen*, 795 F.3d at 47 (cleaned up). Likewise, an employer's knowledge of prior protected activity "does not resolve the question of retaliation *vel non*." *Jones*, 557 F.3d at 679.

Instead, the ultimate inquiry remains whether Facey has produced sufficient evidence to discredit the Agency's legitimate reason for reassigning him. *See Brady*, 520 F.3d at 495. He has not. Recall that the evidence entirely corroborates the Agency's story that Allen reassigned Facey so that he could permanently fill the VEP manager position. Allen stated in both her deposition and her affidavit that she decided to initiate Facey's official reassignment because he had been satisfactorily serving as acting VEP manager for more than a year. Allen Dep. 79:18–20; Allen Aff. ¶¶ 17, 18, 21; *see* Cunningham Aff. ¶¶ 17, 18, 21. And Allen's contemporaneous emails confirm that she viewed the reassignment as "an Administrative task" so that Facey could be formally recognized as VEP manager. Def.'s Ex. I at 69. Further, independent HR assistants determined that Facey could not be officially reassigned to the VEP manager role unless he was reclassified as a non-bargaining unit employee. *See* Def.'s Ex. F at 59; Cunningham Decl. ¶¶ 17–18. And, indeed, the record shows that Allen was investigating the position descriptions and possible reassignments for her entire division—Facey's reassignment was simply completed first. *E.g.*, Def.'s Ex. E at 54, 55–57. Facey does not point to any evidence at all undermining

the coherent, nonretaliatory story painted by the evidence.  A jury could not reasonably find that Allen reassigned Facey in retaliation for his prior protected activity.

## IV.

Because the record does not contain sufficient evidence to permit a reasonable jury to conclude that Facey was reassigned in retaliation for his protected activity, the Court will grant the Agency's motion for summary judgment.  An appropriate Order will issue today.

Dated:  September 10, 2025                               TREVOR N. McFADDEN, U.S.D.J.